LEMUEL ANDREWS *et al.*, plaintiffs in error, *v.* JOHN H. SULLIVAN, defendant in error.

*Error to Warren.*

The general rule is, that Equity will not interfere, where the party has his remedy at Law; but one particular branch of the jurisdiction of Courts of Equity is the enforcement of a specific execution of contracts. The rule, however, though general, is not universal.

A. sold to B. two tracts of land, receiving part of the purchase money in cash and a note for the balance, and executed an agreement for a title in fee, clear of incumbrance, on or before the eighth day of June, 1842, on payment of the note, which was described in the agreement. A. resided in Iowa, and B. in this State, a few miles distant. A. was called to New Orleans on business, expecting to return before the note became due, but was unexpectedly called to Ohio, where he was detained until after the time had elapsed. B. had the money ready to discharge the note, but neither made a tender nor went to A's residence. A., as soon as he returned, made the deed, went to B's. residence, informed him that he had the title, and asked for payment of the note, which was refused and neglected to be paid. On the 12th day of July, A. wrote a note to B., requesting payment, and, during the same month, made a formal tender of the deed, which was refused, as well as payment. The Circuit Court, on the hearing of a bill filed by A. for a specific performance of the contract, overruled a demurrer to the bill, and rendered a decree that the money be paid on a particular day, and default of payment being made, a final decree, and awarded execution for the debt and costs: *Held,* that the demurrer was properly overruled, and that the bill for a specific performance would lie: *Held,* also, that the final decree, with the award and execution, was wrong; that the proper decree would have been to have directed a sale of the premises, upon default being made in payment, and that the complainant should have been required to deposit with the Master, a proper conveyance to be delivered upon payment of the money: *Held,* further, that A. had used due diligence in trying to perform his contract.

The doctrine in Equity is not forfeiture, but compensation, and Courts frequently relieve men who have acted fairly, though negligently, and dispense with that which would make compliance with what the law requires oppressive.

Time is not necessarily deemed of the essence of the contract in Equity, and Courts of Equity are frequently called on to relieve, where the terms for the performance and completion of the contract have not, in point of time, been strictly complied with. But, in all cases, the intention of the parties is to govern, and that is to be gathered from the contract and circumstances.

BILL IN EQUITY, for a specific performance, &c., commenced in the Rock Island Circuit Court, by the defendant in error against the plaintiffs in error. After sundry proceedings in that Court, the venue was changed to Warren county.

At the June term 1844, of the Warren Circuit Court, the Hon. Jesse B. Thomas presiding, a decree was rendered that the defendants specifically execute the agreement set out in the bill; that on or before the day specified in said decree, they pay to the Master in Chancery the amount due complainant by the terms of the agreement for his use; and that the complainant, at the same time, convey the premises mentioned in the agreement to the defendants by a deed containing full covenants of warranty.

At the November term 1844, the Master reported that the defendants had not paid the money, and also reported the amount then due according to the terms of the decree. . The Court thereupon decreed that the plaintiff have and recover of the defendants the sum of $749·88, the amount found to be due, together with the costs of suit, and that he have execution therefor.

The cause was submitted in this Court upon briefs and written arguments.

*Knox & Drury,* and *O. Peters,* for the plaintiffs in error.

1. The bill upon its face shows a want of jurisdiction in the Circuit Court, inasmuch as it shows that the party has a complete remedy at law. *Stone* v. *Manning,* 2 Scam. 531; *Robinson* v. *Chesseldine,* 4 do. 332; Cooper's Eq. 189, where it is said to be ground of demurrer, that complainant has a remedy at law.

As to concurrent jurisdiction of Courts of Law and Equity, see the following authorities: Story's Eq. Pl. 373; Cooper's Eq. 124; Mitf. Eq. Pl. 4, 123; 1 Fonblanque's Eq. 11.

There is no allegation by complainant of fraud, accident or mistake.

2. There is no allegation in the bills that the complainant made and tendered a deed, before or on June 8, 1842; or that he was at Rock Island or Rockingham ready to perform.

The terms of the contract show mutual and dependant covenants. Sullivan made no offer to perform. To have shown himself entitled to relief, he should first have shown

himself "ready, desirous, prompt and eager" to perform his part of the contract. *Franklin* v. *Leach*, 5 Cowen, 506. This case shows that Sullivan should have sought out the defendants.

3. In this case, time was of the essence of the contract. *Lloyd* v. *Collett*, 4 Vesey, 690; Sugden, 278; Story's Eq. Jur. 86 *n; Hipwell* v. *Knight*, 1 Young & Collyer, 415.

Unless a party is held to a strict performance, except where he shows excuse for non-performance, fidelity in the execution of contracts will be destroyed. If Courts will make contracts for parties, by enforcing the performance of them in favor of the party in the wrong; if a delay of a week will not cut off a party from relief in chancery, we may as well say at once that contracts have no binding efficacy, and if a week is excused, so may be a year, &c.

4. The decree is erroneous, because Mixter was not a party. He had become interested in the subject matter. His rights and interests may be affected by the decree. This is a conclusive reason why the decree should be reversed. *Vattier* v. *Hinde*, 7 Peters, 252; *Montgomery* v. *Brown*, decided at the present term. See *post*.

*A. Williams*, and *J. Grant*, for the defendant in error.

If either the vendor or vendee refuse to perform the contract, the other may bring an action for breach of contract, or file a bill for specific performance. 1 Sugden on Vend. 216, 222; *Matthews* v. *Dana*, 3 Madd. 470; *Morgan* v. *Shaw*, 2 Mer. 138; *Boehm* v. *Wood*, 1 Jacob & Walker, 419; *Wallinger* v. *Hilbert*, 1 Mer. 103–4; *Lowe* v. *Manners*, 1 do. 18, 19; *Gomperts* v. ———, 12 Ves. 17; *Daly* v. *Osborne*, 1 Mer. 382; *Birch* v. *Haynes*, 2 do. 444.

A failure on the part of the vendor to perform his contract on the stipulated day, does not, of itself, deprive him of his right to demand a specific performance at a subsequent day, when he shall be able to perform his part of the engagement. *Brashier* v. *Gratz*, 5 Peters' Cond. R. 164–5; *Hepburn* v. *Auld*, 2 do. 253; 1 Johns Ch. R. 376; 1 Sug. Ven. 426–7;

*Seton* v. *Slade*, 7 Ves. 274; *Hearne* v. *Tenant*, 13 Ves. 289; *Taylor* v. *Longworth*, 14 Peters, 174–5.

Sullivan was not bound to convey till the purchase money was paid, and his failure to convey on the day is sufficiently accounted for. Time is not, in this case, made the essence of the contract; on the contrary, the parties contemplated that it would not be performed at the day, as is evident from the agreement that the purchasers should pay interest upon the purchase money from the time it should be due.

The Opinion of the Court was delivered by

SCATES, J. Sullivan filed his bill to enforce the specific performance of a promise to pay the balance due for two tracts of land, sold to defendants. A demurrer to the bill was overruled, answers were filed, and a replication, and the cause heard upon agreed facts. Decree, that the money should be paid by a certain day. The money not being paid, a final decree was entered for the money, and execution awarded.

The facts are as follows: On the third day of July, 1841, Sullivan sold defendants two tracts of land for $990, and received $400 down, and took their note for $590, payable on or before the eighth day of June, 1842, bearing interest at twelve per cent. after maturity.

At the same time, he executed to them an agreement for a title, acknowledging the receipt of that sum, and describing the note given for the remainder, in consideration whereof, he agreed to convey them a title in fee, clear of incumbrance, "on or before the eighth day of June, 1842, on payment of a certain promissory note made by" the defendants as aforesaid.

By the agreement of facts it appears, that Sullivan left his residence in Iowa, prior to June, and went to New Orleans to transact business, expecting to be back before the day of payment; but unexpected business or circumstances required his presence in Ohio, and detained him until the third day of July, and he did not make a tender of a deed on the eighth day of June in consequence of it.

The defendants lived in Rock Island.    On the 4th day of June, Andrews wrote a note to Sullivan, requesting him to make the deed to the other two defendants, and one George Mixter, instead of himself, and sent the note to Sullivan's partner.    On the eighth day of June, they had the money ready to pay for the land, but did not tender it, or go to Rockingham, Iowa, plaintiff's residence, to attempt it.    On the second day after his return home, Sullivan prepared a deed to the defendants, Moore and Lynde and to Mixter, as directed by Andrews, went to Rock Island, and informed defendants that he had title to the premises, and asked for payment.    No money was paid, and no arrangement made.  On the twelfth day of July he wrote them a note requesting payment, but it was not made.    Afterwards, on the ——— day of July, or August, he formally tendered them a deed, which they refused without looking into it, and payment was refused.  Soon after, the bill was filed.

At the time of making the contract, Sullivan had no title to one tract, in consequence of a mistake at the Land Office, but acquired it before, the eighth day of June, though he never exhibited his title to defendants, nor did they ever require it.   Defendants had put a dwelling on the land, worth $300.    After the note fell due they abandoned the premises, of which they had had the possession, without giving Sullivan notice of it.    There was some diminution in the value of the premises, but no material deterioration between the eighth day of June and the bringing suit.

The errors assigned are the overruling the demurrer, and not dismissing the bill; in rendering the first decree to pay the money on a given day; and in rendering the final decree and awarding the execution for the debt and costs.

The points made and insisted on are, that a Court of Equity has not jurisdiction of the case, as the plaintiff has a complete remedy at Law on his note; and secondly, that time is of the essence of this contract; and not having performed it on the day, the plaintiff is in default and can have no relief in Equity, the defendants having a right to abandon, and rescind it, and which they have done.

The general rule is, as contended for by defendants, that

Equity will not interfere where the party has his remedy at Law. *Stone* v. *Manning*, 2 Scam. 531; *Robinson* v. *Chesseldine,* 4 do. 332; Story's Eq. Pl. 373.

It is also true, that an action at law may be maintained upon this note, if plaintiff has performed his part of the agreement.

But it is equally true, that one particular branch of the jurisdiction of Courts of Equity is the enforcement of a specific execution of contracts. While the rule, therefore, is general, it is not universal, and it becomes necessary to inquire if this case be an exception.

In treating of remedies for the breach of contracts for the sale of land, Sugden remarks: "If either the vendor or vendee refuse to perform the contract, the other may bring an action for breach of contract, or file a bill for a specific performance, although it appears to have been formerly thought that as a vendor only wants the purchase money, his remedy was at law." 1 Sug. Vend. 216, § 3. For the first clause, he cites 10 Mod. 503, and for the last, Bunb. 111; 1 Sim. & Stu. 174, and 6 Madd. 245.

I have access to but one of these authorities, and that is 6 Madd. I can find no such case in the volume.

In speaking of compensation, or damages, as incidental to other relief, Justice Story says: "Where, upon a bill brought by the vendor against the vendee for a specific performance of the contract, and for a payment of the purchase money, if the decree is for a specific performance, Equity will decree the payment of the purchase money also, as incidental to the general relief, and to prevent a multiplicity of suits, although the vendor might, in many cases, have a good remedy at law for the purchase money." 2 Story's Eq. Jur. § 796. For this, he cites *Brown* v. *Haff,* 5 Paige, 235, 240; 1 Sim. & Stu. 174, 607, and *Cathcart* v. *Robinson,* 5 Peters, 269. Again, he says: "Where specific performance of a contract respecting chattels will be decreed upon the application of one party, Courts of Equity will maintain the like suit at the instance of the other party, although the relief sought by him is in the nature of compensation in damages or value, for in all such cases the Court acts upon the

ground, that the remedy, if it exist at all, ought to be mutual and reciprocal, as well for the vendor as the purchaser." 2 Story Eq. Jur. § 723. He cites the same Reports, and also, *Forrest* v. *Elwes,* 4 Vesey, 497, 10 Mod. 506; Newl. on Con. 91, and 4 Russ. 298.

The case of *Brown* v. *Haff,* 5 Paige, 235, was a bill to have a certain sum placed in the hands of a third person, to be applied in part payment of the purchase money so applied, and also for a decree for the remainder. The bill was sustained on these grounds, notwithstanding it was objected that plaintiff had his remedy at Law. In the case of *Forrest* v. *Elwes,* 4 Vesey, 497, an account was to be taken, which is a peculiar jurisdiction of the Court of Equity, and the balance was decreed. The case of *Cathcart* v. *Robinson,* 5 Peters, 269, included many grounds of Equity jurisdiction.

Mr. Newland lays down the doctrine as Justice Story does, but he is speaking in reference to contracts in relation to land, and for it, cites 10 Mod. 506, a volume that I cannot procure. He seems to understand the doctrine as laid down by Sugden, for he says: "Such a remedy (by bill) is much more beneficial than the redress, which the latter (the vendor) would obtain at law, the only compensation which he would obtain there being damages for the loss which he might have sustained from the vendee's not performing his agreement."

By proceeding in Equity, the vendor may have it in his power to answer, and clear up, objections to his title that he could not at Law, in many cases. It may, in many cases, be the most advantageous for the vendee, as he may acquire the title, at the same time that he is adjudged to pay.

We are of opinion, that the bill for a specific performance will lie.

But we are of opinion, that the final decree rendered in this case with the award of execution is wrong. The decree should have directed a sale of the premises, upon default being made in payment, and also required the complainant to deposit with the Master a proper conveyance, to be delivered upon payment of the money.

The remaining question is, whether the plaintiff performed

his part of this contract in such a manner as to entitle him
to sue.   Upon this subject, it has been well remarked by
Mr. Cox, in note 2 to 1 P. Wms. 571, that "cases of this
kind depend so much on their own particular circumstances,
that it seems no general rule can be laid down." Lord
Redesdale admits, that it is difficult to reconcile all the cases
in which Courts of Equity have given relief, and compelled
a specific performance of agreements, or refused to do so.
Mitf. Eq.Pl. 119, note *q.*

The doctrine in Equity is not forfeiture, but compensation,
and they frequently relieve men who have acted fairly, though
negligently, and dispense with that which would make com-
pliance with what the law requires oppressive.   2 Story's
Eq. Jur. § 775, and p. 84, note 1.

Time is not necessarily deemed of the essence of the con-
tract in Equity, and Courts of Equity are frequently called
on to relieve, where the terms for the performance and com-
pletion of the contract have not, in point of time, been strictly
complied with.   2 Story's Eq. Jur. §§ 776–7, and notes; 1
Sugden on Vend. 423 to 429; 2 Merivale, 138.   I know it
has been held to be, but I think this to be the better rule.

In this, as in all other cases, the intention of the parties is
to govern, and that shall be gathered from the contract and
circumstances. ' If it appear to be the intention that it shall
cease, unless performed by a certain day, Equity would not
relieve.   I shall not attempt a review and analysis of the
cases.   They are too numerous, and decided too frequently
upon the particular circumstances of each case, to under-
take to follow, as on a general rule.

In the case before us, the parties evidently did not intend
that the contract should be void if not performed on the day
named.   The covenant of the plaintiff to convey is what is
termed a mutual, dependant covenant, and he could only be
compelled to perform it on payment or tender of the purchase
money, and he could not otherwise be put in default.   This
was not done, although it was demanded within a month after
it fell due, and a deed tendered about two months after it
was due.   His delay in not tendering a deed on the day, if,

indeed, he were bound by contract to do so at all, until the money was tendered, is satisfactorily accounted for by his absence and unexpected detention from home. I am of opinion, that he has used due diligence in trying to perform his contract, and has shown himself eager to perform it, while the defendants have shown no disposition to complete theirs, nor any damage that would result from enforcing a specific performance against them.

The former decree is reversed, and cause remanded for final decree, the costs in this Court to be equally divided.

*Decree reversed.*